IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | | |
|---|---|---|
| NINA J. BOWLES, et al., | ) | CASE NO.: 3:03-0703 through 3:03-2019 |
| RITA PULLEN, Executrix of the Estate of Stephen R. Pullen, et al. | ) | CASE NO.: 3:03-0747 through 3:03-0817 |
| GARY L. BARGE, et al., | ) | CASE NO.: 3:03-0818 through 3:03-0832 |
| KAREN A. GRENNELL, et al., | ) | CASE NO.: 3:03-0833 through 3:03-2019 |
| Plaintiffs, | ) | CA 3:03-0833 |
| v. | ) | |
| WESTERN SOUTHERN LIFE INSURANCE COMPANY, et al., | ) | |
| Defendants. | ) | |

FILED
NOV 10 2003
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND**

Plaintiffs hereby oppose Defendants' Memorandum in Opposition to Plaintiffs' Motion to Remand. Plaintiffs hereby adopt and incorporate fully, their previously filed Motion to Remand and Brief in Support of Motion to Remand. Plaintiffs' counsel filed 2,286 Plaintiffs' claims, in one lawsuit in Mason County, West Virginia. The Western Southern Life Insurance Company ("Western Southern") and the individually named Defendants ("Individual Defendants"), removed 1,317 of the cases to this Court on July 29, 2003 based on diversity jurisdiction. Contrary to what the Defendants represent to the Court, the Plaintiffs did not file individual actions. In fact, as the Court can see from Plaintiffs' well-pled Complaint, all of the 2,286 Plaintiffs were included in the original

Kayser Layne
& Clark, PLLC
Attorneys at Law
P.O. Box 210
701 Viand Street
Point Pleasant, WV 25550
(304) 675-5440



27

Complaint. The Mason County Circuit Clerk's Office, pursuant to an Order of the Circuit Judge of Mason County, West Virginia, assigned each of the Plaintiffs a different case number and the same were docketed in that manner by the Clerk. Plaintiffs were also compelled by the Mason County Circuit Clerk's Office to pay individual filing fees for each Plaintiff family unit. This action on the part of the Mason County Circuit Clerk's Office was in direct response to Circuit Court Judge David Nibert's Administrative Order which was entered upon the filing of these cases. That Administrative Order specifically ordered that the Clerk of the Circuit Court of Mason County shall assess additional filing fees in all cases with multiple non-related Plaintiffs under certain circumstances. A copy of that Order is attached hereto as "Exhibit A". That Order specifically addresses the filing fees in multiple Plaintiff cases and directs the Clerk's Office to assess individual fees for non-related or non-family unit Plaintiffs. Because of this, the Circuit Clerk was required to assign separate numbers in part for the purpose of assessing these fees. It is no coincidence that this Order was entered at the same time the present case was filed.

Western Southern and the Individual Defendants removed these cases in groups which were styled *Bowles, Grennell, Pullen, and Barge*. For the sake of judicial economy, the Plaintiffs will address the Plaintiffs' claims for remand in respect to those named groups. The arguments set forth by the Defendants for *Bowles, Grennell* and *Pullen* are almost identical.

**<u>Argument</u>**

<u>Fraudulent Joinder</u>

If a properly joined and served defendant is a resident of the state where an action is filed, the case cannot ordinarily be removed to Federal Court. 28 U.S.C. §1441(b). The underlying question in every removal is whether the Federal Court could have asserted original jurisdiction over the claims that were raised in the Complaint. *Thomas v. Shelton*, 740 F. 2d 478, 483 (7th Cir. 1984). This Court could not have asserted original jurisdiction over these claims because there are citizens of the same state (West Virginia) present in this case and, therefore, diversity does not exist.

Western Southern nor the individual Defendants have taken issue with the joinder of all the Plaintiffs in one lawsuit. Collectively, the Defendants only argued that the Plaintiffs were not joined or consolidated in Mason County. This argument is disingenuous at best. As already previously shown to the Court, the Plaintiffs were certainly joined in one lawsuit and were assigned individual case numbers solely at the direction of the Mason County Circuit Court and the Mason County Circuit Clerk's Office. Plaintiffs did not choose nor did they want to be assigned separate case numbers, but because of this specific Administrative Order issued by the Circuit Judge in Mason County, West Virginia, mainly for the purpose of assessing separate filing fees, the Circuit Clerk's Office, on their own, assigned separate case numbers. In fact, please see the Affidavit of Bill Withers, Circuit Clerk, which confirms this attached hereto as Exhibit B. The collective Defendants have also not argued that it is improper to join and consolidate claims such as these in one lawsuit. Because they have had two chances (their Removal and now their Opposition to Remand) to set forth to this Court why these Plaintiffs should not and cannot be joined, the Court is only left with

accepting the fact joinder of the claims of each of the Plaintiffs was proper under West Virginia law.

Plaintiffs Have Made Claims
Against the Individual Defendants

In the *Bowles* group, even Western Southern admits that many of the Plaintiffs had at least some contact with the individual West Virginia Defendants named in the lawsuit. Therefore, without question, diversity does not exist and when the Court concludes that joinder of these Plaintiffs with the other Plaintiffs in the lawsuit was proper, the collective Defendants' removal was improper.

Recently, the United States District Court for the Southern District of West Virginia opined as to an insurance agent's liability to an insured. In *Hill, Peterson, Carper, Bee, and Deitzler, P.L.L.C. v. XL Specialty Insurance Company, et al.*, 261 F. Supp. 2d 546 (S. D. Vir. 2003), the court held that:

> "However, the same court acknowledged that an insurance agent may have a duty to advise an insured on its coverage needs if (1) a special relationship exists between insured and the agent, (2) the agent holds itself out as a specialist in the particular field, or (3) the agent misrepresents the scope or nature of the insured's coverage."

Citing, *Peter v. Schumacher Enters., Inc.* 22 P. 3d 481, 485 (Alaska 2001); *Marlow Beauty Supply, Inc. v. Farmer's Ins. Group of Co.*, 227 Mich. App. 309, 575 N.W. 2d 324, 327 (1998); and *Fitzpatrick v. Hayes,* 57 Cal. App. 4th 916, 67 Cal. Rept. 2d 445, 452 (1997). The court went on to state in the *Hill* case as follows:

> "The Supreme Court of New Hampshire recently provided the following examples of special circumstances giving rise to a duty to inform an insured of coverage needs: express agreement, long established relationships of entrustment in which the agent clearly appreciates the duty of giving advice, additional compensation apart from premium payments, . . . the agent holding out as a highly-skilled expert coupled with reliance by the insured, . . . or where there is a course of dealing over time

putting the agent on notice that his advice is being sought and relied upon."

Citing, *Sintros v. Hammond,* 148 N.H. 478, 810 Atl. 2d 553, 556 (2002). In the *Hill* case, the Court went on to hold that in adopting the above-stated factors, that the court cannot conclude that there is no possibility that the plaintiff would be able to establish a cause of action against the individual agent and, therefore, remand was granted back to state court. *Hill* at 547. This directly flies in the face of the Defendants' assertion that the resident individual Defendants may not be sued in their individual capacity for transacting with the Plaintiffs.

Plaintiffs Have Pled Their Claims of Fraud Against the Individual Defendants With Specificity

The Defendants challenge the Plaintiffs' ability to plead claims of fraud against the individual Defendants with specificity required by *W. Vir. R. Civ. P.* 9(b) and *Fed. R. Civ. P.*, 9(b). This argument has no merit. As the Court can see from the Plaintiffs well-pled Complaint, the allegations are very specific and very detailed as to what occurred in this case. The Plaintiffs have not filed an ambiguous Complaint, nor have they failed to put the Defendants on notice of what they are defending. In fact, the Plaintiffs' Complaint is comprehensive and more than sufficient to meet the requirements of specificity.

Statute of Limitations

The normal two-year statute of limitations period for claims sounding in tort is tolled until the Plaintiff discovers, or could have discovered, the fraud. *University of West Vir. Bd. of Trustees v. Van Voorhies,* 84 F. Supp. 2d 759, 768 (N.D. W.V. 2000). The Plaintiffs have clearly pled in their Complaint that they did not discover the fraud,

etc. perpetrated upon them until within two years of filing of their lawsuit in Mason County, West Virginia. It is true that in West Virginia, the plaintiffs must make a showing that he or she was prevented from knowing of the claim until the time the plaintiff discovers his injury. *Miller v. Monongalia County Bd. of Educ.*, 556 S.E. 2d 427, 431 (W.V. 2001). But, the Defendants have a similar burden in determining and proving that the Plaintiffs' statute of limitations bars their claims. Western Southern only submits to this Court random "policy language" that Western Southern claims put the Plaintiffs on notice that their policies would not perform as represented. It should be noted that recently counsel for the Plaintiffs deposed several high level executive managers of Western Southern in Cincinnati, Ohio. J. J. Miller, Vice President and former Chief Marketing Officer and the Vice President of Training and Agency, both stated in their deposition that the policies purchased by the Plaintiffs in these cases are complicated and difficult for the policyholders to understand.[1] Furthermore, these Western Southern executives testified that they had a systematic approach to replacing policies and that their replacement system became a serious problem within their own company and it was found to not be in their policyholders' best interest. They testified that they knew their agent representatives in the field were much more knowledgeable about the policies being sold to the Plaintiffs and, therefore, the Plaintiffs could not have known all the details of the policies they were purchasing. The executives testified that even the agents were not completely trained on all aspects and details of the Plaintiffs' policies and how they operate. Therefore, it is without reason why Western Southern

[1] At the time this Brief is being filed, the deposition transcripts of the Western Southern corporate representatives have not yet been transcribed and received by counsel for the Plaintiffs. Plaintiffs would ask the Court to allow them to supplement this Reply Brief with testimony from the Western Southern corporate representatives which support their arguments herein.

would submit to the Court that all of the Plaintiffs, across the board, automatically knew and understood all the provisions of their insurance policies sold by Western Southern and its agents. This simply is not true and to represent to the Court that it is true is incorrect and unfair. Each Plaintiff obviously could have a different understanding of the policy purchased and its terms. Even Western Southern's highest level managers testified that all policyholders will understand these policies to a different degree and in a different way. These facts and law clearly indicate that the *Bowles, Pullen* and *Grennell* Plaintiffs should be remanded.

Bankruptcy Plaintiffs

Defendants' premise removal of the *Barge* group on the ground that said Plaintiffs are currently in Chapter 11 bankruptcy proceedings. However, Plaintiffs contend that their state law causes of action do not relate to Chapter 11 bankruptcy proceedings. Even if the state law action did relate to their bankruptcy proceeding, it would be a "non-core" proceeding and must be remanded pursuant to the doctrine of mandatory or discretionary abstention. Equities of this matter favor remand to the Circuit Court of Mason County, West Virginia.

In order to determine whether this Court can exercise subject matter jurisdiction over this removed matter pursuant to 28. U.S.C. §1334, this action must be classified as one of the following: (1) a case under Title II; (2) a proceeding arising under Title II; (3) a proceeding in a case under Title II; or, (4) a proceeding relating to a case under Title II. *Dean v. American General Finance, Inc.*, 191 B.R. 463 (M.D. Ala. 1996); *In re Wood*, 825 F. 2d 90, 93 (5th Cir. 1997). To determine whether this matter falls within the

bankruptcy jurisdiction, this Court must only consider whether this matter is "related to the bankruptcy. *Id.*

Generally, a proceeding is related to a bankruptcy case that could have been commenced in federal or state court independently of the bankruptcy case, and the outcome of the proceeding could possibly have an impact on the estate being administered in bankruptcy. *Dean,* supra; *Walker v. Commercial Credit Corporation* 192 B.R. 260 (M.D. Ala. 1996); and *In re Wood,* 825 F. 2d at 93; *In re Gardner,* 913 F 2d 1515, 1518 (10th Cir. 1990). Additionally, an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and which in any way impacts on the handling of the bankruptcy estate. *In re Lemco Gypsum, Inc.,* 910 F. 2d 784, 788 (11th Cir. 1990). Following this rationale, Plaintiffs state court claims are not related to Plaintiffs' bankruptcy proceedings. Therefore, this matter should be remanded.

Plaintiffs' Claims Are "Non-Core" Proceedings

If this Court concludes that Plaintiffs' claims are related to a bankruptcy proceeding, it must then determine whether the removed action is a "core" or non-core" proceeding under 28 U.S.C. §157(b). Under §157(b)(1), a bankruptcy court has the sole power to hear all "core proceedings arising under Title II or arising in a case under Title II". *Id.* However, a bankruptcy court's power to determine matters is limited in a "non-core" or "related to" proceeding. *Id.*

Defendants allege in their Notice of Removal that this matter involves a "core" proceeding under §157(b). Three events must occur before a matter can be deemed a core proceeding under §157(b)(2): (1) a person should be in bankruptcy; (2) a person

or entity such as a creditor must file a claim against the estate; (3) in response to this proof of claim, the estate must file a claim against the person who filed the original proof of claim. *Id.* While 28 U.S.C. §157 does not define a "core" proceeding, it does contain a non-exhaustive list of core proceedings. This list includes:

> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
>
> (C) counterclaims by the estate against persons filing claims against the estate;
>
> (D) orders in respect to obtaining credit;
>
> (E) orders to turn over property of the estate;
>
> (F) proceedings to determine, avoid, or recover preferences;
>
> (G) motions to terminate, annul, or modify the automatic stay;
>
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
>
> (I) determinations as to the dischargeability of particular debts;
>
> (J) objections to discharges;
>
> (K) determinations of the validity, extent, or priority of liens;
>
> (L) confirmations of plans;
>
> (M) orders approving the use or lease of property, including the use of cash collateral;

> (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. §157(b)(2). The distinction between what is "core" and what is "non-core" is far from clear. *In re Apex Express Corporation*, 190 F. 3d 624 (4th Cir. 1999). "On the one hand, a broad reading of the literal terms of the statutory text could lead to the result that courts treat just about every dispute as "core." See, e.g., 28 U.S.C.A. §157(b)(2)(A) (matters concerning the administration of the estate); §157(b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate). But, the statute must be interpreted keeping in mind (1) that Congress passed it in response to the defects revealed by *Northern Pipeline*, and (2) that *Northern Pipeline* remains good law, even if perhaps narrowed by subsequent decisions, *see Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986).

The United States Supreme Court struck down portions of the Bankruptcy Act of 1978 as being violative of Article III of the Constitution in *Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982). The basis for the *Northern Pipeline* opinion was that the Bankruptcy Act of 1978 allowed non-Article III courts, such as Bankruptcy Courts, to hear claims based upon state created private rights that arose independent from bankruptcy proceedings. *Northern Pipeline*, 458 U.S. at 84, 102 S. Ct. 2858. In the wake of *Northern Pipeline*, Congress

enacted core/non-core distinction to try and remedy the defects in the bankruptcy system. *Id.* **Congress may not force non-consenting claimants whose claims are based on state-created private rights into non-Article III courts (Bankruptcy Court).** *In re Apex Express Corporation,* 190 F. 3d 624 (4th Cir. 1999), citing *Northern Pipeline,* 458 U.S. at 70-72, 77, 81-84, 102 S. Ct. 2858.

In *In re Millennium Studios, Inc.*, 286 B.R. 300 (S.D. Mary. 2002), the court cited *In re. Apex* from the 4th Circuit and held that the Plaintiff's claims in that case were ground in state law and were derived from a pre-petition contract. *Id.* The *In re Millennium Studios, Inc.* court also held that the contract claims being asserted in *In re Apex* were asserted against a stranger to the bankruptcy case. *Id.* That is exactly what exists in the case presently before the Court. The Defendants are complete strangers to the bankruptcy proceeding and that fact is undisputed. The court opined in *In re Millennium Studios* that state law claims for breach of contract, breach of warranty, intentional and negligent misrepresentation, asserted by the debtor against the party whom it contracted with were not sufficiently related to the field of bankruptcy law to come within "core" jurisdiction of the bankruptcy court. *Id.* The claims asserted by the plaintiff in *In re Millennium Studios, Inc.*, were not based on rights created by federal bankruptcy law, but rather state-created rights. *Id.* The court further held that even though the proceeding might be significant to the bankruptcy, it is not one that could arise only in the context of a bankruptcy and that fact would tend to hold against a finding that the Plaintiffs' claims are "core" to the bankruptcy proceeding. *Id.* This Court can and should find exactly the same here and apply the same reasoning. There are no "core" claims existing. Plaintiffs' claims do not arise from or relate to the bankruptcy

proceeding, but rather, involve insurance transactions outside the purview of the Bankruptcy Court.

28 U.S.C. §1664(c) Requires Mandatory Abstention in Remand of This Action

Since this matter is a "non-core" proceeding, this Court must abstain from hearing this matter pursuant to 28 U.S.C. §1334(c). Section 1334(c)(2) provides:

> "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

Plaintiffs comply with all five requirements of §1334(c)(2): (1) this motion requesting abstention is timely filed; (2) this action is premised solely upon state law; (3) this action is a "non-core" proceeding and does not "arise under" or "arise in" a case under title 11; (4) there is no independent basis for federal jurisdiction other than § 1334(b) and (5) this action has been commenced and can be timely adjudicated in the Circuit Court of Mason County, West Virginia. *Id.*; see also, *Blakeley v. United Cable System*, 105 F. Supp. 2d 574, 583 n. 9 (S.D. Miss. 2000); *quoting In re Gober*, 100 F. 3d 1195, 120 (5th Cir. 1996). Since each of these requirements is met in the instant action, this Court must abstain from hearing this matter and remand this case to the state court.

The Equities Require Discretionary Abstention and Remand of This Action

Even if this Court determines that it is not bound by the "mandatory abstention" doctrine, it still may remand this matter under the "discretionary abstention" doctrine provided by 28 U.S.C. §1334(c)(1) or for any equitable reason under 28 U.S.C. §

1452(b). Discretionary abstention may even be applied to "core" proceedings arising under title 11. *Dean*, supra; *Walker*, supra; *Allen v. City Finance*, 224 B.R. 347, 353 (S.D. Miss. 1998). This Court may abstain from hearing this matter "where abstention is in the interest of justice, comity with state courts, or respect for state laws." *Id.*

When deciding whether or not to remand an action based on those equitable grounds, the court should consider a number of factors;

> (1) forum non-conveniens; (2) that the entire action should be tried in the same court; (3) the extent to which state law dominates; (4) whether a state court is better able to resolve questions of state law; (5) the existence of a right to trial by jury; (6) judicial economy; (7) comity; (8) prejudice to the involuntarily removed party; (9) the degree of relatedness of the action to the main bankruptcy case; (10) a lessened possibility of inconsistent results; and (11) the effect of bifurcating claims or parties. *Id.* at 233.

*Hatcher v. Lloyd's of London*, 204 B. R. 227, 232 (M.D. Ala. 1997). In the present action, most of these factors apply favoring remand to state court.

Additionally, in *In re Norrell*, 198 B.R. 987 (Bankr. N.D. Ala. 1996) the court set forth factors that a court may consider in determining whether to exercise discretionary abstention. These factors are:

> (1) the effect of abstention on the efficient administration of the bankruptcy estate;
>
> (2) the extent to which state law issue predominate
>
> (3) the difficulty or unsettled nature of the applicable law;
>
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy courts;
>
> (5) the basis of bankruptcy jurisdiction, if any, other than §1334;
>
> (6) the degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(8) the burden of the bankruptcy court's docket;

(9) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(10) the existence of a right to a jury trial; and

(11) the presence in the proceeding of non-debtor parties;

*Id.* at 995-6.

In this instance, all of these objectives would be served by abstention. This matter is brought solely under principles of state law. The Circuit Court of Mason County, West Virginia, is duly able to hear and timely adjudicate this matter. The basis for removal of this action lies in a bankruptcy proceeding.

Additionally, it would be unjust and inequitable to require Plaintiffs to litigate their claims in federal court, because Plaintiffs did not elect this forum and this Court would not possess jurisdiction over their claims absent Plaintiffs' Bankruptcy Proceeding. Plaintiffs' claims are strictly state law claims and do not invoke any federal statutes, provisions or regulations. This matter has been commenced in state court and can be timely adjudicated by the state court. Therefore, the equities strongly favor remand of this matter to the Circuit Court of Mason County, West Virginia.

## CONCLUSION

The Plaintiffs in the *Bowles, Pullen, Grennell, and Barge* groups hereby continue to urge this Court to remand their cases back to Mason County, West Virginia where they were originally and properly filed.

BRADLEY H. LAYNE
Attorneys for Plaintiffs

OF COUNSEL:

Bradley H. Layne
Matthew L. Clark
C. Dallas Kayser
KAYSER LAYNE & CLARK, PLLC
701 Viand Street, P. O. Box 210
Point Pleasant, WV 25550
(304) 675-5440
(304) 675-5455 fax

OF COUNSEL:

Joseph H. "Jay" Aughtman, *pro hac vice*
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES
P.O. Box 4160
Montgomery, AL 36103-4160
(334) 269-2343
(334) 954-7555 fax

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed the original of the foregoing document in this Court with copies to be served upon all Defendants of record as listed below by placing a copy of same in the United States Mail, first class, postage prepaid on this the 6th day of November, 2003.

OF COUNSEL

Thomas R. Goodwin
Carrie G. Fenwick
Goodwin & Goodwin, LLP
P.O. Box 2107
Charleston, WV 25328

Harry M. Rubenstein
Kay, Casto & Chaney, PLLC
50 Clay Street
Morgantown, WV 26501

William J. Cooper
Erica M. Baumgras
Flaherty, Sensabaugh & Bonasso, P.L.L.C.
200 Capitol Street; Post Office Box 3843
Charleston, WV 25301

F. James Foley, *Pro hac vice*
Joseph R. Miller, *Pro hac vice*
Kimberly W. Herlihy, *Pro hac vice*
Voyrs, Sater, Seymour & Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH 43216-1008

PLAINTIFF'S EXHIBIT
A

IN THE CIRCUIT COURT OF MASON COUNTY, WEST VIRGINIA

IN RE: FILING FEES IN MULTIPLE PLAINTIFF CASES

03 JUN -3 PM 2:57

ADMINISTRATIVE ORDER

On this date comes the Chief Judge of the Circuit Court of Mason County, West Virginia, *sua sponte,* to address the issue of filing fees in multiple plaintiff cases.

It appears to the Court that certain cases, usually being mass tort filings, result in extraordinary work, expense and costs to the office of the Clerk of the Circuit Court of Mason County, West Virginia. It is, therefore, appropriate to review this issue and take appropriate action relating thereto, giving consideration to the most recent decision of the West Virginia Supreme Court of Appeals on the issue in Cable v. Hatfield, 202 W.Va. 638, 505 S.E.2d 701 (1998). The courts of this state have inherent authority to require necessary resources, such as, sufficient funds for operating expenses, supplies and other material items. The Court finds that multiple plaintiff civil cases place an additional burden in terms of utilization of the clerk's resources, funds, staff, workspace, supplies and other material items requiring this Court to implement this order as a measure to relieve a portion of such burden.

It is, therefore, ORDERED that the Clerk of the Circuit Court of Mason County, West Virginia, shall assess additional filing fees in all cases with multiple, non-related plaintiffs as follows:

1. In addition to the first filing fee as provided by law [currently Eighty-Five Dollars ($85.00) for a civil matter], a supplemental filing fee of an

additional like sum [currently Eighty-Five Dollars ($85.00) for a civil matter] shall be assessed for each individual family unit plaintiff, not a member of the household or family unit of the original or first plaintiff;

2. The household or the family unit plaintiff shall be considered as individuals living together as a family unit or an individual entitled to take from the estate of a decedent under the laws of the State of West Virginia, which estate is named as a plaintiff in the litigation;

3. Prospectively, each case filed shall be accompanied by the appropriate fees as determined by this order. Provided, however, in the event the Clerk of this Court shall receive a complaint which list multiple plaintiffs, complies with the West Virginia Rules of Civil Procedure and is accompanied by a single filing fee mandated by West Virginia Code, Chapter 59, Article 1, Section 11(a), as amended, the Clerk shall file the complaint. Once such a complaint has been filed, the circuit judge to whom the case has been assigned shall determine whether the requirements, if any, that have been administratively established by this order are met such that additional filing fees should be assessed.

4. Filing fees in multiple plaintiff cases received by the Clerk of the Circuit Court of Mason County, West Virginia, shall be distributed by said Clerk in the same manner as all other filing fees in accordance with the law.

The Clerk of this Court shall post a copy of this order in the Clerk's Office and shall forthwith forward an attested copy of this order to all attorneys who regularly practice in this Court.

ENTERED this the 3rd day of June, 2003.

03 JUN -3 PM 2:53

David W. Nibert, Chief Judge

TRUE COPY TESTE Bill Withers/dr
MASON COUNTY CIRCUIT CLERK

PLAINTIFF'S EXHIBIT B

**AFFIDAVIT**
**OF BILL WITHERS**

STATE OF WEST VIRGINIA,
COUNTY OF MASON, TO-WIT:

I, BILL WITHERS, being first duly sworn, hereby depose and states as follows:

1. That I am the Clerk of the Circuit Court of Mason County, West Virginia;
2. That the case of Nina J. Bowles, Michael P. Brown, Gary L. Cotton, Charles M. Heib, Jr., Mary Pamela Heib, James P. Young, Rita Pullen, Executrix of the Estate of Stephen R. Pullen, deceased, and Torres W. Williamson, and other plaintiffs identified in Exhibit "A" attached hereto and incorporated fully herein, vs. Western Southern Life Insurance Company, John Thabet, George Crump, et al, was originally filed as a single case with multiple Plaintiffs;
3. That pursuant to an Administrative Order of the Circuit Court of Mason County, West Virginia, entered the 3rd day of June, 2003, each family unit of Plaintiff was assigned a separate case number by the Circuit Clerk's Office;
4. This action was taken on behalf of the Circuit Clerk's Office for purposes of assessing and tracking the filing fees as directed by Court Order and for tracking documents that may apply to individual Plaintiffs';
5. The separate numbers assigned were for the convenience of the Circuit Clerk's Office and was in no way at the assistance of Counsel for Plaintiffs.

6. Further, affiant saith not.

Dated this the 6 day of November, 2003.

Bill Withers
BILL WITHERS

Taken, subscribed and sworn to before me by Bill Withers, this the 6th day of November, 2003.

My Commission expires: Oct 17, 2008

Jeannie M. Fields
NOTARY PUBLIC

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
JEANNIE M. FIELDS
P.O. BOX 193
MASON, WV 25260
My Commission Expires October 17, 2008